# IN UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| Otter Products, LLC, | ) |
|     *Plaintiff*, | ) |
| v. | ) Case No.: 1:19-cv-02126 |
| The Jel Sert Co., | ) |
|     *Defendant*. | ) |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

The Court should deny Defendant The Jel Sert Co.'s ("Jel Sert") motion to dismiss (the "Motion") Plaintiff Otter Products LLC's ("Otter Products") Complaint. (Dkt. 17.) The Court has subject matter jurisdiction over Otter Products' declaratory judgment claims based on Jel Sert's clear and definite accusations that the OTTER+POP designation violates state and federal trademark laws. This Court has personal jurisdiction due to Jel Sert's targeted conduct aimed at Colorado residents that led to this dispute. If the Court decides personal jurisdiction does not exist, then Otter Products respectfully requests the transfer of this the action to the Northern District of Illinois, in lieu of dismissal, under 28 U.S.C. § 1631. Finally, there is no compelling reason for this Court to decline exercising its jurisdiction here.

## I.    FACTUAL BACKGROUND

This is a trademark dispute between Jel Sert, based in Chicago, Illinois, and Otter Products, based in Fort Collins, Colorado. (Dkt. 1, ¶¶4-5.) Otter Products owns the renowned OTTERBOX brand of cases and covers for smartphones and related goods. (*Id.* at ¶¶6-9.) Jel Sert owns the OTTER*POPS brand of frozen ice treats. (*See id.* at ¶35.)

The parties' relationship began in May of 2018, when Jel Sert and its licensing representative sought out and approached employees of Otter Products at a Las Vegas

trade show to request a meeting about co-marketing the parties' products. (*Id.* at ¶29.) The parties' discussions went on to include talks of a potential partnership in providing philanthropic support to local law enforcement through the sale of special edition and joint branded OTTERBOX coolers. (*Id.* at ¶30.) Jel Sert wanted to promote and leverage a connection between the parties' respective OTTER-formative marks and products.

Also in 2018, Otter Products and PopSockets began to discuss a collaboration surrounding OTTERBOX smartphone cases integrated with POPGRIP phone socket grips and tops. (*Id.* at ¶25.) Otter Products invited Jel Sert to join the collaboration and sent proposed materials to Jel Sert in early 2019 outlining the potential role of Jel Sert's OTTER*POPS cartoon characters in the existing plans for the OTTER+POP products partnership. (*Id.* at ¶33.) Between January and March of 2019, Otter Products let Jel Sert 'peek under the hood' of the project with inside access to information.

As the OTTER+POP products hit store shelves in March 2019, Jel Sert chose not to collaborate and instead sent a cease and desist letter from its outside counsel. (*Id.* at ¶33-34.) The letter asserted that the use of the OTTER+POP designation diluted the reputation and goodwill of the OTTER*POPS mark, "in violation of federal and state trademark, anti-dilution and unfair competition laws." (*Id.* at ¶34; Dkt. 1-2.) Jel Sert threatened Otter Products with a lawsuit for damages due to the alleged willful dilution of the OTTER*POPS mark and demanded that use of the OTTER+POP designation cease nationwide. (Dkt. 1, ¶34.)

Alarmed at the sudden about-face by a company that had courted Otter Products for months and was now using its own private information against it, Otter Products responded to the letter on March 25. It explained Jel Sert's dilution concerns were unfounded and that the OTTER*POPS brand had not achieved the degree of fame to support a dilution claim. (*Id.* at ¶35.) In April of 2019, Jel Sert changed its mind and reinitiated co-branding discussions with Otter Products, expressing interest in Otter Products' OTTER+POP proposals. (*See* Dkt. 17 at 4.) Jel Sert withdrew from the discussions in June 2019. (*See id.*)

Jel Sert's outside counsel sent another letter on or about July 19, 2019. (Dkt. 1, ¶36; Dkt. 1-4.) This time, Jel Sert's legal theory focused on alleged dilution and unfair competition under California state law, but the letter threatened Otter Products (and PopSockets) with litigation unless it promptly agreed to discontinue nationwide use of the OTTER+POP designation after December 2020. (*See* Dkt. 1, ¶36.; Dkt. 17-1 at 40.) Jel Sert narrowed its claims presumably because Jel Sert believes it has the best chance of winning under California's anti-dilution statute, but its desire has always been a nationwide injunction.

Jel Sert's collaboration requests followed by litigation threats led Otter Products to seek certainty about its rights. (*See* Dkt. 1, ¶45.) Otter Products filed this suit on July 24, 2019 (the "First Action"). (Dkt. 1.) Yet, Jel Sert's gamesmanship continued. A week later, Jel Sert filed a second lawsuit in the Central District of California (the "Second Action").[1] (*See* Dkt. 17 at 5.) Just two days before the due date of this brief, Jel Sert sent Otter Products an executed Release and Covenant Not to Sue ("Release"). (Kliebenstein Decl., **Exhibit C**.) The Release discharges Otter Products from any claims for federal dilution under 15 U.S.C. § 1125(c) and unfair competition under the common law of the State of Colorado. The Release does not apply to any claims for unfair competition under § 1125(a), nor does it discharge Otter Products from any state law dilution claims. Jel Sert has not committed to limiting its claims to dilution under California state law, and the Release is entirely silent about Jel Sert's pursuit of a nationwide injunction. In short, the Release does not subvert Otter Products' declaratory claims in this case. It is merely another attempt to convince this Court to dismiss the Complaint while reserving Jel Sert's avenues to seek nationwide relief.

Notably, the Release asserts Otter Products violated Jel Sert's federally registered trademark rights—not California specific rights. Jel Sert is trying to use California state law

---

[1] Otter Products moved to dismiss or transfer that action to this Court. (Declaration of Heather J. Kliebenstein, ("Kliebenstein Decl."), at ¶2 & **Exhibit A**.) Since that motion, Jel Sert amended its Complaint in an attempt to avoid dismissal. (*Id.*, **Exhibit B**.)

to enforce the federal rights its Release simultaneously seeks to waive. Despite Jel Sert trying to cover up this matter as a "California only" dispute (including this 11th hour attempt to divest this Court of jurisdiction), the Release confirms Jel Sert is simply trying to game the system to obtain the most favorable result. Its arguments regarding jurisdiction, viewed through this lens, fail legally and factually.

## II. ARGUMENT

**A. This Court Has Subject-Matter Jurisdiction Over Otter Products' Claims.**

The Tenth Circuit requires two elements to demonstrate a sufficient case or controversy: The suit must be (1) "definite and concrete, touching the legal relations of parties having adverse legal interests"; and (2) "real and substantial," requesting specific relief and not an advisory opinion. *Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1244 (10th Cir. 2008) The Court must determine whether "'the facts alleged, under all the circumstances, show there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Id.* (quoting *MedImmune v. Genentech*, 549 U.S. 118, 127 (2007)). When *all* the circumstances and underlying facts are considered here, it is clear an extant controversy exists that is sufficiently immediate to warrant declaratory relief.

First, the controversy is definite and concrete, and touches the legal relations of the parties, whose legal interests are adverse. Jel Sert alleges Otter Products' use of the OTTER+POP designation unfairly competes with and dilutes its OTTER*POPS brand of frozen treats. Second, the dispute is real, substantial and not based on hypothetical facts. Otter Products is actively using the OTTER+POP designation nationwide. The declaratory relief it seeks is tied to that ongoing conduct. Finally, the dispute bears sufficient immediacy in view of Jel Sert's litigation threats in March and July 2019. Jel Sert's Motion further shows its current pursuit of an injunction and damages in the Second Action. (*See* Dkt. 17-1 at 61.) Otter Products has met the requirements to show an actual case or controversy exists.

Jel Sert argues that if its outside counsel's letters constituted a threat to sue, "it was only under California law." (Dkt. 17 at 7.) But Jel Sert's March 18, 2019, letter explicitly claimed the use of OTTER+POP "will dilute the reputation and goodwill of our client's mark, in violation of *federal* and state trademark, anti-dilution and unfair competition laws." (Dkt. 17-1 at 5 (emphasis added).) The March 18 letter has never been withdrawn, nor has Jel Sert affirmatively disavowed its intention to litigate claims beyond those brought under California state law. Those facts distinguish this case from the decisions cited in Jel Sert's Motion. *See Mailer v. Zolotow*, 380 F. Supp. 894, 896 (S.D.N.Y. 1974) ("[T]his court is advised by Zolotow in his affidavit that he had no intention of commencing any other litigation apart from the California suit."); *Streck, Inc. v. Research & Diagnostic Sys.*, 665 F.3d 1269, 1278 n.8 (Fed. Cir. 2012) (describing the formal winnowing of asserted patent claims during the course of the litigation); *Fujitsu v. NETGEAR*, No. 07-cv-710, 2009 U.S. Dist. LEXIS 67488, at *20 (W.D. Wis. July 29, 2009) (noting the voluntary dismissal with prejudice of all previously asserted patent claims). Jel Sert cannot escape the reality that it levied specific and clear allegations of trademark dilution and unfair competition nationwide—and, hence, in any state—against Otter Products, which have not expired.

Jel Sert will argue in its Reply that the Release obviates Otter Products' claims. Not so. The Release does not apply to any claims of unfair competition under 15 U.S.C. § 1125(a)—Otter Products' second count for relief. Further, the Release does not obviate the dilution claims because Jel Sert is not foreclosed from pursuing additional state law dilution claims outside of California. Jel Sert could effectively add claims to its Second Action or initiate other actions under the anti-dilution statutes of other states in the region.

In order to moot any part of this controversy, Jel Sert must show its enforcement efforts against Otter Products "could not reasonably be expected to resume" in the future. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 92 (2013). Unlike the covenant not to sue at-issue in *Already,* Jel Sert's Release is not "encompass[] all of [Otter Products'] allegedly unlawful

5

conduct." *Id.* at 94 (internal quotes omitted). The Release does not cover "any claim *or* any demand," nor does it protect Otter Products' distributors and customers, or PopSockets, Otter Products' co-collaborator. *Id.* (emphasis in original). Indeed, Jel Sert's amended complaint in the Second Action seeks relief against any entity acting "with Defendant's authority." (Kliebenstein Decl., Ex. C at 8.) Moreover, the Release is limited to a subset of Jel Sert's prior accusations and does not apply to the declaratory claim for no unfair competition under § 1125(a). The Release does not moot this dispute. *C.f. USANA Health Sciences, Inc. v. SmartShake US, Inc.*, No. 2:17-cv-00139, 2018 U.S. Dist. LEXIS 95465 (D. Utah June 5, 2018) (case mooted by covenant covering all claims and demands for trademark infringement, unfair competition, and dilution under both federal and state law, which applied to affiliates and customers).

Jel Sert's arguments further ignore the relief it hopes to attain in the Second Action. Jel Sert recently amended its California complaint in an attempt to restrict relief to the prohibition of use of OTTER+POP within California, but the practical impact given e-commerce and supply chain economics would be the recall and destruction of **all** existing materials bearing the OTTER+POP designation. (Exhibit B at pp. 9-10.) Even if Otter Products could exclude sales into California, there is no way to geographically limit the use of the OTTER+POP designation online. Further, Jel Sert seeks damages from all of Otter Products' sales of OTTER+POP cases, not just those sold in California. (*Id.*) Jel Sert's promise not to sue Otter Products for federal dilution under 15 U.S.C. § 1125(c) does not change the fact that the relief it seeks is nationwide. Accordingly, this Court has subject matter jurisdiction over Otter Products' claims.

**B. This Court Has Personal Jurisdiction Over Jel Sert.**

Colorado's long-arm statute confers the maximum jurisdiction permitted by the Due Process Clause. (*See* Dkt. 17 at 8). Specific personal jurisdiction requires a defendant have "minimum contacts" with the forum state "such that having to defend a lawsuit there would

6

not 'offend traditional notions of fair play and substantial justice.'" *Dudnikov v. Chalk & Vermilion Fine Arts*, 514 F.3d 1063, 1070 (10th Cir. 2008). The "minimum contacts" standard first requires the defendant to have "purposefully directed" its activities at residents of the forum state. *Dudnikov*, 514 F.3d at 1071. Second, plaintiff's claims must "arise out or" or "relate to" those activities. *Id.* The underlying aim is to avoid subjecting an out-of-state defendant to suit in a forum based only on "random, fortuitous, or attenuated contacts." *Id*. While a plaintiff bears the *prima facie* burden of establishing sufficient minimum contacts, the defendant must "present a compelling case" to show that the court's exercise of jurisdiction over it would be unreasonable based on other considerations. *Arocho v. Nafziger*, 367 Fed. Appx. 942, 949 (10th Cir. 2010) (internal quotation omitted); *see also Openlcr.com, Inc. v. Rates Tech.*, 112 F. Supp. 2d 1223, 1229 (D. Colo. 2000).

1. **Jel Sert purposefully directed its activities at the forum state.**

Jel Sert claims only its cease and desist letters are relevant for the purposeful direction prong of the minimum contacts test. Jel Sert relies heavily on *Avocent*, a Federal Circuit decision, for its contention that "[t]he relevant inquiry is whether the declaratory judgment defendant 'purposefully directed' enforcement activities to the forum state." (Dkt. 17 at 9.) But Tenth Circuit law, not Federal Circuit law, governs here.[2] The Tenth Circuit has applied the 'effect test' from *Calder v. Jones*, 465 U.S. 783 (1984) in the context of a declaratory judgment action. *Dudnikov*, 514 F.3d at 1071-72. The *Calder* effect test provides that a court may find purposeful direction based on the presence of (1) an intentional action, (2) that is expressly aimed at the forum state, (3) the effects of which the defendant knew would be felt in the forum state. *Id.* at 1071 (explaining that the *Calder* effect test is one way

---

[2] *Avocent* is distinguishable because it did not involve a party that repeatedly strung the declaratory judgment plaintiff along by seeking collaboration, threatening litigation, seeking collaboration, and again threatening litigation. *Avocent* does not suggest that the facts of a case should be ignored simply because a cease and desist letter was sent.

7

to assess the purposeful direction prong of the personal jurisdiction analysis). The *Dudnikov* court found the test was met, and purposeful direction was established, where the defendant intentionally sent a letter to a third-party that the defendant intended to and knew would cause injury to the plaintiff in the forum state. *Id.* at 1074-75.

Relying on *Dudnikov*, courts have held that sending demand letters in conjunction with other activities aimed at the forum state establish personal jurisdiction in a declaratory judgment context. For example, *Ezfauxdecor, LLC v. Appliance Art Inc.*, No. 15-9140, 2016 U.S. Dist. LEXIS 21742 (D. Kan. Feb. 17, 2016), involved a claim for false advertising and a declaration of trademark rights. *Id.* at *2. The Court found specific personal jurisdiction was established because the parties communicated by phone and email and the defendant traveled to the forum, sent a cease and desist letter threatening litigation, and sold products in Kansas. *Id.* at *7-9 (denying motion to dismiss for lack of personal jurisdiction).

Similarly, in *C5 Med. Werks, LLC v. CeramTec GmbH*, No. 14-cv-00643, 2014 U.S. Dist. LEXIS 124989 (D. Colo. Sept. 8, 2014), the defendant sent agents to promote its products at three national industry conferences held in Colorado, out of which its trademark dispute arose with the plaintiff, who was a Colorado resident. *Id.* at *11. The defendant sent the plaintiff a single demand letter, and the plaintiff filed a declaratory suit several months later. *Id.* at *3-4. The Court denied the defendant's motion to dismiss for lack of personal jurisdiction because the defendant had purposefully directed its trademark activities at Colorado by promoting its brand at the conferences and "broadcast[ing] a willingness to enforce those rights" against third parties. *Id.* at *11-12, *15; *see also Openlcr.com*, 112 F. Supp. 2d at 1227-28 (denying motion to dismiss where defendant's only contact with Colorado was sending demand letters and making phone calls to plaintiff in Colorado).

Here, Jel Sert did more than simply send cease and desist letters into Colorado. It approached Otter Products, a Colorado resident, about a collaboration leveraging the parties' OTTER brands. Jel Sert proactively sought to increase recognition of its brand and

products among residents of Colorado through an association with Otter Products and PopSockets, another Colorado resident. The parties' proposed collaboration included joint philanthropic efforts to directly target Colorado residents at upcoming Denver Broncos and Colorado State University football games. (Kliebenstein Decl., **Exhibit D** at 2.)

Jel Sert also directed multiple enforcement-related communications at Colorado, one of which included a draft complaint naming *both* Otter Products and PopSockets as the defendants in a lawsuit. (Dkt. 17-1 at 40.) Jel Sert's behavior had the effect of creating a cloud of uncertainty felt not just by Otter Products, but also by non-party PopSockets. Jel Sert knew when it engaged in this conduct that the brunt of the effects would be felt in this State by two Colorado residents. Using the carrot of proposed collaboration, and then the stick of litigation threats in the next, Jel Sert engaged in a repeating cycle of hot and cold behavior. Both the carrot and the stick were intentionally and specifically aimed at Colorado. Jel Sert's contacts with Colorado cannot be described as random, fortuitous, or attenuated.

**2. These claims arose out of and relate to Jel Sert's activities in Colorado.**

This dispute "arise[s] out of the very activities" that Jel Sert has undertaken in Colorado. *C5 Med. Werks*, 2014 U.S. Dist. LEXIS 124989, at *11. Otter Products' declaratory claims spring from Jel Sert's lengthy and targeted activities in Colorado. The parties' interactions began when Jel Sert deliberately sought out Otter Products to discuss co-branding opportunities. (Dkt. 1, ¶29.) Those discussions resulted in Jel Sert receiving unique and early 'under-the-hood' knowledge about the 2019 OTTER+POP partnership being developed with PopSockets in Colorado. (*Id.* at ¶33.) Otter Products told Jel Sert about the OTTER+POP collaboration in confidence before the public launch, and sent internal marketing materials outlining the collaboration, all the while believing Jel Sert wanted to partner and collaborate. (*See* Dkt. 1, ¶33; Ex. D to Kliebenstein Decl.)

But Jel Sert became dissatisfied with its role in the collaboration, and then used its unique knowledge to levy accusations against Otter Products and PopSockets. Jel Sert

waited until the launch of the project to do so in its March 2019 letter. Jel Sert knew Otter Products would be most vulnerable at that time, having already publicly launched the project and OTTER+POP name. Jel Sert timed its objection to try to extract maximum leverage.

Jel Sert subsequently reinitiated collaborative discussions with Otter Products, and expressed interest (again) in participating in the OTTER+POP partnership and promoting an association between the parties' OTTER brands. Eventually, Jel Sert reverted (again) to threatening litigation against both Otter Products and PopSockets. Like the declaratory judgment defendant in *C5 Medical Werks*, Jel Sert actively sought to promote its trademarks and products on multiple occasions through a collaboration with Otter Products and "broadcast[ed] a willingness to enforce" the same trademarks against both Otter Products and PopSockets. *See* 2014 U.S. Dist. LEXIS 124989, at *11-12.

### 3. Exercising personal jurisdiction over Jel Sert is not unreasonable.

By failing to raise any other considerations in its Motion, Jel Sert has waived its right to argue the exercise of jurisdiction over it runs afoul of the standards of fair play and substantial justice. *Evans v. Astrue*, 855 F. Supp. 2d 1231, 1241 n.2 (D. Colo. 2012). Regardless, the facts show that litigating this dispute in Colorado would be far less burdensome to both parties than California. Los Angeles is twice as far from Jel Sert's Chicago office as Denver. Colorado has at least as much interest as any other state in seeing that conduct within the State by Colorado residents from does not violate trademark law. *See C5 Med. Werks*, 2014 U.S. Dist. LEXIS 124989, at *14. And the interstate judicial system's interest in efficiently resolving controversies is furthered by the exercise of jurisdiction in this first-filed case. *See id*. No factors disfavor the exercise of jurisdiction, so the Court should find that it has personal jurisdiction over Jel Sert.

## C. If this Court Determines Personal Jurisdiction is Lacking, Transfer to the Northern District of Illinois Under 28 U.S.C. § 1631 is Proper.

Under 28 U.S.C. § 1631, when a "court finds that there is a want of jurisdiction, the

court shall, if it is in the interest of justice, transfer such action or appeal to any other such court … in which the action or appeal could have been brought at the time it was filed.…" This action could have been filed in the Northern District of Illinois. Jel Sert is an Illinois resident with a principal place of business in Chicago. (Dkt. 1, ¶5; *see also* Dkt. 17 at 3.) Thus, it is 'at home' in that forum and subject to general personal jurisdiction there. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).

Courts in the Tenth Circuit consider three factors when deciding whether transfer under § 1631 is in the interest of justice: (i) whether the new action would be time barred; (ii) whether the claims are likely to have merit; and (iii) whether the original action was filed in good faith. *See Trujillo v. Williams*, 465 F.3d 1210, 1223 n.16 (10th Cir. 2006). Courts have discretion to consider the wishes of the plaintiff when deciding between transfer and dismissal. *See, e.g.*, *Whiting v. Hogan*, 855 F. Supp. 2d 1266, 1276 (D. New Mexico 2012) (noting it would be "'justice defeating' to dismiss an action that could be brought elsewhere").

The first factor weighs in favor transfer because Otter Products would retain its original filing date. "Transfer is in the interest of justice when the plaintiff has a viable interest in preserving the original filing date." *Leffebre v. United States*, 129 Fed. Cl. 48, 54 (Ct. Cl. 2016); *see also Goodwin v. Star Trans, Inc.*, No. No. 05-cv-354, 2005 U.S. Dist. LEXIS 28093, at *6-7 (D. Colo. Nov. 9, 2005) (granting transfer to avoid claims being time barred). The parties have filed competing actions in separate forums. As Otter Products initiated this First Action, transferring this case would preserve the procedural chronology of the parties' dispute. *See Leffebre*, 129 Fed. Cl. at 54 ("Section 1631 further provides that a transferred case retains its original filing date."). Even where the other factors weigh in favor of transfer, as they do here, courts still transfer actions that are not time-critical. *See PS Audio, Inc. v. Allen*, No. 18-cv-00206, 2018 U.S. Dist. LEXIS 221458, at *18 (D. Colo. Aug. 10, 2018).

The second factor weighs in favor of transfer. Jel Sert does not challenge Otter Products' alleged the necessary elements of its declaratory judgment claims.

11

The third factor weighs in favor of transfer. Otter Products filed its action in this district based on its good faith belief that Jel Sert is subject to personal jurisdiction on the basis of its intentional and repeated conduct aimed at the State of Colorado. Even if the Court determines it does not possess personal jurisdiction, it is "far from a foregone conclusion." *Id.* at *20 (recommending transfer under § 1631 when personal jurisdiction was lacking). Each of the factors weigh in favor of transferring this suit to the Northern District of Illinois if this Court determines it lacks personal jurisdiction over Jel Sert.

**D. Jel Sert Has Not Shown that this Court Should Ignore the First-to-File Rule and Decline to Exercise Jurisdiction Over Otter Products' Claims.**

As a final effort, Jel Sert argues this Court should exercise its discretion to decline jurisdiction. Courts consider the following factors to determine whether to exercise jurisdiction in a declaratory judgment case: (1) whether the action would settle the controversy; (2) whether it would clarify the legal relations at issue; (3) whether the action was brought for "procedural fencing" or to provide an arena for a race to res judicata; and (4) whether any alternative remedy is better or more effective. *St. Paul Fire & Marine v. Runyon*, 53 F.3d 1167, 1168 (10th Cir. 1995).

The Court should exercise its jurisdiction here because doing so "would settle the legal relations in dispute and afford relief from uncertainty or insecurity …." *Genentech v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993). Jel Sert's hot and cold actions put Otter Products in an untenable position, forcing it to have either continued to field Jel Sert's alternating entreaties and litigation threats, facing the specter of increased liability with each passing day, or file the present action seeking a declaration of the parties' respective trademark rights. It chose the latter course, which is consistent with the very purpose of the Declaratory Judgment Act. *See City of Aurora v. PS Sys.*, No. 07-cv-02371, 2008 U.S. Dist. LEXIS 82053, at *25 (D. Colo. Sept. 19, 2008).The goals of the Act are furthered here and the applicable factors favor the exercise of jurisdiction.

This declaratory judgment action will resolve the real dispute between the parties: Otter Products' nationwide use of OTTER+POP. While Jel Sert purports to limit its cause of action to California law, its proposed Release lacks a promise to only to sue Otter Products for dilution under California state trademark law. Instead, the Release preserves Jel Sert's ability to re-plead federal unfair competition claims under 15 U.S.C. § 1125(a), and would further allow for additional dilution and unfair competition claims brought under the laws of any state other than Colorado. The Release did not relinquish its demand for nationwide relief. Tellingly, the Release states that Jel Sert objects to Otter Products' use of OTTER+POP based on Jel Sert's federally registered, nationwide trademark rights, and it reserved all claims not expressly released. Jel Sert could easily file suit in California or Colorado (or any other jurisdiction) for unfair competition under 15 U.S.C. § 1125(a) and dilution/unfair competition under the law of 49 other states. Jel Sert could still effectively seek a nationwide injunction by using a patchwork of state laws.

This suit will clarify the legal relations between the parties. Even if Otter Products' declaratory claim for no dilution under the Lanham Act has been mooted, the Release did not discharge Otter Products from federal unfair competition under 15 U.S.C. § 1125(a), so Otter Products' Count II of the Complaint clearly stays in this case. That claim for no unfair competition under the Lanham Act will, at a minimum, clarify whether any likelihood of confusion exists vis-à-vis the parties' brands and products. And because Jel Sert's California dilution claim arises out of the same transaction or occurrence, it is a compulsory counterclaim. *E.g.*, *Starter Corp. v. Converse, Inc.*, No. 95-cv-3678, 1996 U.S. Dist. LEXIS 17502, at *17 (S.D.N.Y. Nov. 26, 1996) (state and federal dilution claims were compulsory to declaratory claims of non-infringement). This Court is competent to adjudicate Jel Sert's California state law claim. Colo. Civil Rights Comm'n v. 1950 Logan Condos. Condo. Ass'n, No. 13-cv-02583, 2013 U.S. Dist. LEXIS 181199, at *6 (D. Colo. Dec. 30, 2013) (federal courts regularly apply state law).

The first-to-file rule applies. A first-filed action generally has priority over a second-filed action, unless compelling circumstances, such as procedural fencing, anticipatory filing, or bad faith warrant otherwise. *Swift Distrib., LLC v. Starin Mktg. Inc.*, No. 16-cv-00893, 2016 U.S. Dist. LEXIS 190093, at *5 (D. Colo. Nov. 4, 2016); *see also St. Paul Fire*, 53 F.3d at 1170. Those circumstances are not present here.

Otter Products' Complaint was not an anticipatory filing because Otter Products was in no position to anticipate when, if ever, Jel Sert might ultimately file suit. Jel Sert never provided a date certain by which it would file suit, which precludes a finding that this suit was "anticipatory" under the first-to-file rule. *See, e.g., Am. Nat'l Prop. & Cas. Co. v. Wood*, No. 07-1048, 2008 U.S. Dist. LEXIS 42347, at *32 (D. New Mexico March 21, 2008); *Sony Computer Entm't Am., Inc. v. Am. Med. Response, Inc.*, No. C06-06603, 2007 U.S. Dist. LEXIS 24294, at *7-10 (N.D. Cal. Mar. 13, 2007). Even anticipatory declaratory judgment actions are "not improper where the opposing party has created a controversy by threatening litigation but has withheld filing suit." *Openlcr.com*, 112 F. Supp. 2d at 1231 (citing other cases). Jel Sert's first threatened of litigation in March 2019, but failed to follow through on it then. When Jel Sert renewed its demands and threats in July 2019, Otter Products had no reason to know if that time would be any different.[3]

Jel Sert misfires when it points to the pre-suit communications between the parties' counsel as somehow supporting the inference that Otter Products filed this action for an improper purpose. (*See* Dkt. 17 at 14.) When Jel Sert's outside counsel sent the July 2019 demand letter, Otter Products' in-house counsel politely acknowledged receipt of the communication and innocuously stated she would confer with her team before further

---

[3] *Buzas Baseball, Inc. v. Board of Regents*, No. 98-4098, 1999 U.S. App. LEXIS 21630 (10th Cir. 1999) is not analogous and does not support a finding that this action is anticipatory. There, the declaratory plaintiff admitted that it believed a trademark infringement action would soon be filed against it, and there is no indication the parties' negotiations involved one repeatedly changing its mind, as Jel Sert did. *Id.* at *6, *8.

responding. (*See id.*) She did not indicate that Otter Products would reply by letter in the coming days. She did not ask Jel Sert to hold off on filing suit or request more time to negotiate. Jel Sert does not and could not argue that it delayed filing the Second Action based on any of Otter Products' communications.

Likewise, Otter Products is not guilty of forum shopping. Otter Products filed this action where it developed the OTTER+POP product line at issue and where it engaged in discussions with Jel Sert. Selecting a convenient forum connected to the dispute is not the forum shopping disfavored under the first-to-file rule, "whereby a party scours the country for a forum where the law or judiciary is more favorable to its cause[]."*O2COOL, LLC v. Discovery Commc'ns., LLC*, No. 12 C 3204, 2013 U.S. Dist. LEXIS 5543, at *11-12 (N.D. Ill. Jan. 15, 2013); *see also Barnes & Noble, Inc. v. LSI Corp.*, 823 F. Supp. 2d 980, 992 (N.D. Cal. 2011) (no forum shopping where party chose a forum with relevance to the parties); *Swift Distrib.*, 2016 U.S. Dist. LEXIS 190093, at *4-8 (considering first-to-file rule and venue transfer factors in tandem).

In reality, Jel Sert is the party engaged in procedural fencing. Jel Sert knew it could not win a dilution claim under the Lanham Act so it forum shopped for better state law. It chose California because it viewed that state's law as being the most favorable for its dilution claims. California has no connection to the facts underlying the parties' dispute, other than it being one of many states where both parties' respective products are marketed and sold.

<u>There is no alternative remedy that is better or more effective</u>. Jel Sert can pursue its coercive California dilution claim (and the other claims it reserved) in this case. In sum, none of the factors weigh in favor dismissing Otter Products' declaratory judgment action. The Court should exercise its declaratory jurisdiction here.

### III. **CONCLUSION**

Jel Sert's motion to dismiss should be denied in its entirety. If the Court, however, decides that it lacks jurisdiction, then transfer to the Northern District of Illinois is appropriate.

Dated: September 11, 2019

Respectfully submitted,

*/s/ Dana Jozefczyk*

Dana Jozefczyk, #41501
MERCHANT & GOULD P.C.
1801 California St., Suite 3300
Denver, CO 80202
Telephone: 303.357.1670
Facsimile: 612.332.9081

Heather Kliebenstein
MERCHANT & GOULD P.C.
150 South Fifth Street, Suite 2200
Minneapolis, MN 55402
Telephone: 612.332.5300
Facsimile: 612.332.9081

Ian McFarland
MERCHANT & GOULD P.C.
9717 Cogdill Road, Suite 101
Knoxville, TN 37932
Telephone: 865.380.5960
Facsimile: 612.332.9081

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 11, 2019, a true and accurate copy of the **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS** via e-mail to the following:

Cindy Coles Oliver
Nathan B. Thoreson
LEWIS ROCA ROTHGERBER CHRISTIE LLP
1200 17th St., Suite 3000
Denver, CO 80202

/s/ Shannon Maney
Shannon Maney